UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RONALD KRISS,

                        Plaintiff,                          1:08-CV-0230
                                                            (GTS/RFT)
v.

SCHENECTADY CITY SCHOOL DISTRICT;
and STEPHEN RAUCCI,

                        Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

TOWNE, RYAN & PARTNERS, P.C.                    JOHN J. HOKE, ESQ.
  Counsel for Plaintiff                        ELENA DeFIO KEAN, ESQ.
450 New Karner Road
PO Box 15072
Albany, New York 12205

GIRVIN & FERLAZZO P.C.                          PATRICK J. FITZGERALD, ESQ.
  Counsel for Defendant Schenectady CSD
20 Corporate Woods Boulevard, 2nd Floor
Albany, New York 12211-2350

MAYNARD, O'CONNOR,                              ANNE-JO P. McTAGUE, ESQ.
SMITH & CATALINOTTO, LLP
  Counsel for Defendant Raucci
6 Tower Place
Albany, New York 12203

HON. GLENN T. SUDDABY, United States District Court Judge

## MEMORANDUM DECISION and ORDER

        Currently before the Court in this employment civil rights action, filed by Ronald Kriss

("Plaintiff") against the Schenectady City School District and Stephen Raucci ("Defendants"),

are the following two motions: (1) Plaintiff's motion to amend his Complaint pursuant to Fed. R.

Civ. P. 15(a)(a); and (2) Defendants' opposition to that motion, and their cross-motion to dismiss

Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. Nos. 18, 25.)  For the reasons set forth below, Plaintiff's motion is granted, and Defendants' motion is granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Original Complaint

Generally, liberally construed, Plaintiff's original Complaint alleges as follows: (1) he was employed as a custodial supervisor for the Schenectady City School District ("Defendant SCSD") from August 29, 1998, through about October 20, 2006; (2) beginning in May, 2003, he began reporting to Defendant Raucci, who held the title of director of facilities; (3) "[t]hereafter, [he] began to suffer from a diagnosed anxiety disorder, which is causally connected to [Defendant] Raucci's behavior"; (4) "[he] also suffers from irritable bowel syndrome"; (5) "[o]n more than one occasion, [Defendant] Raucci would say things to ridicule and humiliate [him]"; (6) "[m]ore than once, [Defendant] Raucci directly attempted to grab the [his] genitals, forcing [him] to physically remove himself from Raucci's grasp or otherwise flee to escape"; (7) "[Defendant] Raucci would additionally use sexually charged language in [his] presence despite [his] objection"; (8) "[d]ue to Raucci's conduct, [he] was forced to take medical leave on May 29, 2005"; (9) "[o]n July 6, 2005, [he] filed a complaint with the Director of Personnel for the District, Michael Stricos, alleging sexual harassment";[1] (10) a conference was subsequently held on October 6, 2005, "in which [he] outlined Raucci's offensive conduct"; (11) "[a]fter the meeting, [he] was assured that some remedial action would be taken"; (12) "[u]pon information

---

[1]    Plaintiff alleges that "[t]he Schenectady City School District maintains a Non-Discrimination/Anti-Harassment Policy."

and belief, no action was ever taken"; (13) "[he] did not return to work" after taking medical leave; (14) on October 20, 2006, he "received notice of his termination by the District"[2]; (15) on February 8, 2007, following his termination, he "inquired with Michael Stricos regarding the status of his complaints . . . and was informed that since [he] was terminated, there were 'no issues to resolve'"; and (16) "[a] finding was . . . made by the New York State Worker's Compensation Board that there was a causal connection between [Defendant] Raucci's conduct and [his] injuries."[3]  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)

Based on these allegations, Plaintiff asserts the following claims: (1) a claim of hostile work environment under 42 U.S.C. § 2000e ("Title VII") against Defendant SCSD; (2) a claim of disability discrimination under 42 U.S.C. § 12101 *et seq*., the Americans with Disabilities Act ("ADA") against Defendant SCSD; (3) a claim of retaliation under Title VII against Defendant SCSD; (4) a claim of retaliation under the ADA against Defendant SCSD; (5) a claim of disability discrimination under § 296 of the New York State Human Right's Law ("NYSHRL") against Defendant SCSD; (6) a claim of retaliation under the NYSHRL against Defendant SCSD; (7) a claim of denial of equal protection under the Fourteenth Amendment against Defendants; and (8) a claim of retaliation under the First Amendment against Defendant SCSD. (Dkt. No. 1.)

---

[2]     Plaintiff also alleges that, "[p]rior to [his] termination, he requested that the District accommodate him by reassigning him to work under a different supervisor[, but] [t]he District refused [his] request."

[3]     Plaintiff alleges that his injuries consist, among other things, of a "permanent partial disability."

Familiarity with the remaining factual allegations supporting these claims in Plaintiff's original Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties.  (*Id*.)

### B.  Plaintiff's Proposed Amended Complaint

On August 15, 2008, Plaintiff filed a motion to amend his Complaint pursuant to Fed. R. Civ. P. 15(a)(2).[4]  (Dkt. No. 18, Attach. 12.)  In seeking to amend his Complaint, Plaintiff argues that amendment is proper under Fed. R. Civ. P. 15(a)(2) for five reasons: (1) there is no dilatory motive behind the request; (2) the request is not being made in bad faith; (3) the request is not being made after undue delay; (4) the request is not futile; and (5) Defendants will not suffer prejudice if he is granted leave to amend.

Filed with his motion to amend is his proposed Amended Complaint, in which he seeks to add three Defendants and two claims.  (Dkt. No. 18, Attach. 5.)  More specifically, Plaintiff's proposed Amended Complaint seeks to add as Defendants (1) the Schenectady City Board of Education (the "Board"), (2) Eric Ely, individually and in his capacity as Superintendent of the SCSD, and (3) Michael Stricos, individually and in his capacity as Director of Human Resources.  (*Id*.)  In addition, Plaintiff's proposed Amended Complaint seeks to add the following claims: (1) a procedural due process claim against Defendants SCSD, the Board, and Ely; (2) a substantive due process claim against Defendants SCSD, Raucci, and Stricos; and (3) a claim of failure to provide proper notice of his right to receive continued benefits under 29

---

[4]        Defendants filed an Answer to Plaintiff's original Complaint on March 12, 2008. (Dkt. No. 7.)

4

U.S.C. § 1166 against Defendant SCSD.[5]  (*Id*.)  Plaintiff's proposed Amended Complaint also

omits Plaintiff's claim of retaliation under the NYSHRL asserted in his original Complaint.  (*Id*.)

Familiarity with the factual allegations supporting these claims in Plaintiff's proposed

Amended Complaint is assumed in this Decision and Order, which is intended primarily for

review by the parties.  (*Id*.)

### C.     Defendants' Motion to Dismiss

Generally, in support of their motion to dismiss for failure to state a claim upon which

relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), Defendants argue as follows: (1)

Plaintiff is barred from bringing this action against SCSD because he chose Worker's

Compensation as a remedy; (2) Plaintiff's hostile work environment claim must be dismissed

because he has failed to allege facts plausibly suggesting a claim of hostile work environment;

(3) Plaintiff's ADA claims must be dismissed because he failed to notify his employer of any

disabilities from which he suffered; (4) Defendant SCSD is protected from liability by the

*Ellerth/Faragher* affirmative defense because SCSD is not in violation of its own non-

discrimination/anti-sexual harassment policy; (5) Plaintiff's equal protection claim must be

dismissed because he has failed to allege facts plausibly suggesting that his equal protection

rights were violated; (6) because Plaintiff's allegations against SCSD are "extreme and

outrageous," they should not be addressed by the Court; (7) Defendant Raucci's criminal history

is "a red herring" that should not be considered by the Court; (8) because Plaintiff was provided

with all of the procedural process he was due under the New York Civil Service Law, his

---

[5]     The Court notes that the proposed Amended Complaint also adds Defendant
Stricos to Plaintiff's denial of equal protection claim.

Fourteenth Amendment procedural due process claim must be dismissed; (9) Plaintiff's claim

under 29 U.S.C. § 1166 should be dismissed because, at the time he was terminated, he was not

receiving health care benefits from SCSD, and therefore no notice was required; (10) Plaintiff's

claims under the ADA and Title VII are barred by the statute of limitations;[6] (11) Plaintiff should

not be permitted to amend his Complaint to add new Defendants (or claims against these new

Defendants) because he has failed to exhaust his administrative remedies; (12) Plaintiff's claims

under 42 U.S.C. § 1983 must be dismissed because he has failed to "establish a prima facie case

of discrimination"; and (13) Plaintiff "has a propensity for claiming sexual harassment in his

employment settings," (apparently to suggest that Plaintiff's claims are therefore without merit).

(*See generally* Dkt. No. 25, Attach. 6. [Defs.' Memo. of Law].)

        Defendants also argue that the Court should impose sanctions against Plaintiff based on

his "blatantly false" and "misleading" pleadings.  (Dkt. No. 25, Attach. 6.)  However, because

Defendants have not moved for sanctions pursuant to Fed. R. Civ. P. 11, the Court declines to

consider this argument in this Decision and Order.

        In Plaintiff's response to Defendants' motion to dismiss, he argues as follows: (1) New

York State's Worker's Compensation Law does not bar him from recovery under Title VII, the

ADA, 42 U.S.C. § 1983, or the NYSHRL; (2) he has alleged facts plausibly suggesting a claim

of hostile work environment; (3) he has alleged facts plausibly suggesting that Defendant SCSD

was on notice of his disabilities, and therefore his ADA claims should not be dismissed; (4)

---

        [6]        More specifically, Defendants argue that Plaintiff's filing of his Complaint with
the EEOC occurred more than three years after the alleged harassing conduct.  Defendants also
appear to argue that, because "Plaintiff requested a right to sue letter in lieu of administrative
review," the EEOC never reviewed the merits of his claims, and therefore he has not properly
exhausted his administrative remedies with regard to these claims.

because Defendants failed to address Plaintiff's NYSHRL claim, that claim should not be

dismissed; (5) Defendant SCSD is not entitled to the *Ellerth/Faragher* affirmative defense

because tangible employment action was taken against him, and, even if the defense is available

to Defendant SCSD, it is inapplicable because he has alleged facts plausibly suggesting that

Defendant SCSD failed to exercise reasonable care to prevent or correct the sexually harassing

behavior that he was experiencing; (6) he has alleged facts plausibly suggesting a claim for

violations of his right to free speech and his right to equal protection; (7) his allegations of

extreme and outrageous conduct, and criminality, should be given the same weight as any other

allegations considered in a 12(b)(6) motion; (8) because Defendants failed to properly address

his procedural due process claim, that claim should not be dismissed; (9) he has alleged facts

plausibly suggesting that Defendant SCSD violated 29 U.S.C. § 1166, and the evidence

introduced by Defendant misleads the Court on the issue; (10) his claims under Title VII and the

ADA are not barred by the statute of limitations; (11) because his claims under Title VII, the

ADA, and 42 U.S.C. § 1983 are adequately plead, they should not be dismissed; (12)

Defendants' argument that Plaintiff has a propensity for claiming sexual harassment is ridiculous

and irrelevant; and (13) Defendants' request for sanctions should be denied.  (*See generally* Dkt.

No. 30 [Plf.'s Response Memo. of Law].)

     In their reply, Defendants argue as follows: (1) the determinations rendered by the

Workers' Compensation Board do not have "collateral estoppel affect" on the current action; (2)

Plaintiff was not entitled to COBRA notification under 29 U.S.C. § 1166 because (a) Plaintiff's

application for health insurance beginning on October 1, 2006, and ending on December 31,

2006, was improper, and (b) Plaintiff failed to pay the requisite premiums for this insurance

during this period;[7] (3) contrary to Plaintiff's argument, there are no witnesses to corroborate his testimony at his Workers' Compensation Hearing regarding the occurrence of "many grossly inappropriate events"; and (4) "Plaintiff's termination was compliant with New York Civil Service Law § 71 in that he had been out of work for at least one year and indicated that he was incapacitated from the performance of the duties of his job."  (*See generally* Dkt. No. 32 [Defs.' Reply Memo. of Law].)

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing Motions to Amend a Complaint

Motions to amend a complaint are governed by Fed. R. Civ. P. 15, which states that leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir. 1993). Nevertheless, leave to amend a complaint is not automatic, and a court may deny a motion to amend for good cause, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." *Foman*, 371 U.S. at 182; *S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Bldg. 1 Hous.*, 608 F.2d 28, 42 (2d Cir. 1979).

---

[7]    More specifically, Defendants argue that, because Defendant SCSD paid Plaintiff's premiums between October 1, 2006, and December 31, 2006, Plaintiff owes Defendant SCSD $416.69 for each month that the premium was paid.  The Court notes, however, Defendant SCSD has not filed a counterclaim with regard to this issue.  As a result, the Court declines to consider such a claim in this Decision and Order.

**B.     Legal Standard Governing Motions to Dismiss for Failure to State a Claim**

"A motion to dismiss on the basis that an action is barred by the statute of limitations is analyzed under Federal Rule of Civil Procedure 12(b)(6), not 12(b)(1)."  *Garner v. DII Indus., LLC*, 08-CV-6191, 2010 WL 456801, at *1 (W.D.N.Y. Feb. 4, 2010) (citing *Ghartey v. St John's Queens Hosp.*, 869 F.2d 160, 162 [2d Cir. 1989]).

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga County*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review) (citations omitted).

With regard to the first ground, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  By requiring this "showing," Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."  *Jackson*, 549 F. Supp.2d at 212, n.17 (citations omitted).  The main purpose of this rule is to "facilitate a proper decision on the merits."  *Rusyniak v. Gensini*, 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citations omitted).

The Supreme Court has long characterized this pleading requirement under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.  *Jackson*, 549 F. Supp.2d at 212, n.20 (citations omitted).  However, even this liberal notice pleading standard "has its limits."  *Id*. at

212, n.21 (citations omitted).  As a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard. *Id*. at 213, n.22 (citations omitted); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1.  *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955 (2007).  In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Twombly*, 127 S. Ct. at 1968-69.  Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."  *Id*. at 1965 (citations omitted).  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*. (citations omitted).

As have other Circuits, the Second Circuit has recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, including claims brought by *pro se* litigants (although the plausibility of those claims is to be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[8]  It should be

---

[8]        *Rusyniak,* 629 F. Supp.2d at 214 & n.34 (citations omitted).

emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [citation omitted; emphasis added]. That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) (emphasis added). That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level.[9]

   As the Supreme Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Ashcroft*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. Rule 8

---

   [9]      *Rusyniak,* 629 F. Supp.2d at 214 & n.35 (explaining holding in *Erickson*) (citations omitted).

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at

1949 (citations omitted). Thus, a pleading that only "tenders naked assertions devoid of further

factual enhancement" will not suffice. *Id*. (internal citations and alterations omitted).

### C.     Legal Standards Governing Plaintiff's Claims

Because the parties to this action have demonstrated, in their memoranda of law, an

accurate understanding of the relevant points of law contained in the legal standards governing

Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in

this Decision and Order, which (again) is intended primarily for review by the parties. (*See* Dkt.

No. 25, Attach. 6 [Defs.' Memo. of Law]; Dkt. No. 30 [Plf.'s Response Memo. of Law]; Dkt.

No. 32 [Defs.' Reply Memo. of Law].)

The Court will only pause to clarify the applicability of the burden-shifting framework

laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), on a motion to dismiss for

failure to state a claim upon which relief can be granted. The parties appear to agree that claims

for age or sex discrimination, or for retaliation, under the ADEA, Title VII, and the HRL, are all

analyzed using the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*,

411 U.S. 792 (1973), and later refined in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248

(1981). As a result, "a plaintiff alleging claims under these statutes must first establish a prima

facie case, and, if the employer succeeds in rebutting the plaintiff's proof by presenting evidence

that the plaintiff was terminated for a legitimate, lawful reason, the plaintiff must present

evidence from which a factfinder could conclude that unlawful animus was the real reason for

the termination." *Foster v. Humane Soc'y of Rochester and Monroe County, Inc*., 09-CV-6569,

2010 WL 2867325, at *4 (W.D.N.Y. July 21, 2010) (citation omitted).

12

However, the parties appear to disagree as to whether the referenced burden-shifting framework applies on a motion to dismiss for failure to state a claim.  After carefully reviewing the case law, the Court concludes that, on a motion to dismiss for failure to state a claim, "it is unnecessary to go through th[e] entire [*McDonnell Douglas*] analysis . . . ."  *Foster*, 2010 WL 2867325, at *4 (explaining that "[i]n *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), the Supreme Court held that there is no heightened pleading requirement for Title VII cases, and that an employment discrimination complaint need not allege *specific* facts that establish a prima facie case of discrimination" (emphasis added).[10]  Rather, to overcome a motion to dismiss for failure to state a claim, a complaint in a Title VII case need only do what all complaints need do–allege facts plausibly suggesting a claim upon which relief can be granted.  *Morales v. Long Island R.R. Co.*, 09-CV-8714, 2010 WL 1948606, at *3 (S.D.N.Y. May 14, 2010).

## III.    ANALYSIS OF PLAINTIFF'S MOTION TO AMEND

Under the circumstances, the Court finds that Plaintiff has shown cause for the granting of his motion to amend his Complaint.  Among other things, the motion was filed less than six months after the Complaint was filed, the request to amend is Plaintiff's first; discovery has yet to commence; the Court is unable to conceive of (nor have Defendants made the Court aware of)

---

[10]     *See also Braphman-Bines v. New York City Police Dept.,* 03-CV-10207, 2005 WL 22843, at *3 (S.D.N.Y. Jan. 3, 2005) ("Whether [Plaintiff] has, or ultimately can, fulfill the requirements of the *McDonnell Douglas* test, however, is not the proper inquiry at this stage in the litigation.  In *Swierkiewicz v. Sorema N.A.*, the Supreme Court unanimously rejected the use of the *McDonnell Douglas* framework in determining whether a plaintiff has met the pleading requirements, explaining that '[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement.'") (citation omitted); *accord*, *Palmer v. New York State Office of Court Admin.*, 00-CV-0110, 2007 WL 2362360, at *6 (N.D.N.Y. Aug. 3, 2007) (Munson, J.); *Jackie K. Smith v. Consumer Credit Counseling Servs.*, 03-CV-1033, 2005 WL 1842859, at *6 (N.D.N.Y. Aug. 1, 2005) (Mordue, J.).

any reason why Defendants would be prejudiced if Plaintiff's motion to amend his Complaint were granted; and granting leave to amend would not be entirely futile for the reasons discussed below in Part IV of this Decision and Order.  (For example, the Court notes that one of Plaintiff's proposed new claims survives the futility argument contained in Defendants' motion to dismiss for failure to state a claim.)

With regard to Defendants' argument that Plaintiff should not be permitted to amend his Complaint to add new Defendants (or claims against these new Defendants) because Plaintiff has failed to exhaust his administrative remedies, the Court rejects this argument.  As noted by Plaintiff in his memorandum of law in opposition to Defendants' motion to dismiss, under the facts and circumstances of this case, there is no administrative prerequisite to a claim brought under the Employee Retirement Income Security Act (ERISA) or 42 U.S.C. ¶ 1983.

As a result, Plaintiff's motion to amend his Complaint is granted.  Plaintiff is directed to file a signed copy of his proposed Amended Complaint in accordance with this Decision and Order, and in accordance with Rule 7.1(a)(4) of the Local Rules of Practice of this Court.  To the extent that Plaintiff wishes to cure any of the pleading deficiencies in his proposed Amended Complaint, Plaintiff is directed to move to amend his Amended Complaint after it is properly filed.

## IV.   ANALYSIS OF DEFENDANTS' MOTION TO DISMISS

### A.   Plaintiff's Claims Under Title VII Against Defendant SCSD

#### 1.   Claim of Hostile Work Environment

As stated above in Part I.C. of this Decision and Order, Defendants assert four arguments in support of their request for the dismissal of this claim: (1) Plaintiff has failed to allege facts

plausibly suggesting a claim of hostile work environment; (2) in any event, Plaintiff's decision to

chose Workers' Compensation as a remedy bars him from bringing such a claim; (3)

alternatively, the applicable statute of limitations bars such a claim; and (4) alternatively,

Defendants are protected from liability by the *Ellerth/Faragher* affirmative defense because

Defendant SCSD is not in violation of its own non-discrimination/anti-sexual harassment policy.

Based on a liberal construction of Plaintiff's proposed Amended Complaint, the Court

rejects Defendants' first argument.  "An employee plaintiff suing under Title VII may state a

claim of discriminatory harassment based upon a hostile work environment by alleging (1) that

h[is] workplace was permeated with discriminatory intimidation that was sufficiently severe or

pervasive to alter the conditions of h[is] work environment, . . .  and (2) that a specific basis

exists for imputing the conduct that created the hostile environment to the employer."  *Murray v.*

*N.Y. Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995) (citations omitted).

"The test for the first prong is whether the employment environment was 'objectively

hostile'–that is, whether the environment was permeated with discriminatory intimidation,

ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment."  *Little v. Nat'l Broad. Co., Inc*., 210 F.

Supp.2d 330, 388 (S.D.N.Y. 2002) (citations omitted).  "The Supreme Court has emphasized that

the standard for judging whether a work environment is objectively hostile must be sufficiently

demanding so as to prevent Title VII from becoming a general civility code."  *Little*, 210 F.

Supp.2d at 388 (internal quotation marks and citations omitted).  "Courts must distinguish

between merely offensive and boorish conduct and conduct that is sufficiently severe or

pervasive as to alter the conditions of employment."  *Id*. (internal quotation marks and citations

omitted).

"In determining whether a workplace is objectively hostile, a court should look at the totality of the circumstances." *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 [1993]). Factors that courts should examine include "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Forklift Sys., Inc.*, 510 U.S. at 23. "When evaluating the 'quantity, frequency, and severity' of the incidents, the court must look at the incidents 'cumulatively in order to obtain a realistic view of the work environment.'" *Little*, 210 F. Supp.2d at 389 (citing *Schwapp v. Town of Avon*, 118 F.3d 106, 111 [2d Cir. 1997]). However, "[i]solated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (noting that "[w]e have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment").

"Various types of acts, depending on their severity or pervasiveness, can create a hostile work environment." *Id.* Courts have found that "vulgar comments and gestures directed at employees can be sufficiently offensive, pervasive and continuous to constitute a sexually hostile work environment. *Id.* (citing *Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 61, 63 [2d Cir. 1992]). "Offensive displays can also create a hostile work environment." *Id.* "For example, courts have found sexual harassment based on a hostile work environment where employees were subjected to 'the display of obscene visual representations or the communication of sexually offensive remarks.'" *Id.* (quoting *Iannone v. Frederic R. Harris, Inc.*, 941 F. Supp. 403, 411 [S.D.N.Y. 1996]).

16

With regard to a sex-based hostile work environment under Title VII, "it is 'axiomatic' that . . . a plaintiff . . . demonstrate that the conduct occurred *because of* h[is] sex." *Alfano*, 294 F.3d at 374 (emphasis added); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (noting that "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination . . . because of . . . sex").  However, instances of harassment need not be directed at the employee complaining of the harassment to contribute to a hostile work environment.  This is because "evidence of harassment of other members of the protected group, if part of a pervasive or continuing pattern of conduct, is surely relevant to show the existence of a hostile work environment." *Id*. (citing *Perry v. Ethan Allen, Inc*., 115 F.3d 143, 150 [2d Cir. 1997]).

"Even if a work environment is found to be abusive, however, a plaintiff must establish [the second prong of the standard governing claims of hostile work environment, namely] that the conduct which created the hostile environment should be imputed to the employer." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 118 S.Ct. 2257 (1998), *and Faragher v. City of Boca Raton*, 118 S.Ct. 2275 (1998) (citing *Kotcher*, 957 F.2d at 63 [other citation omitted]).  "[T]he Supreme Court [has] declined to announce a definitive rule on employer liability, holding instead that federal courts should be guided by common law principles of agency." *Tomka*, 66 F.3d at 1305 (citing *Meritor Savings Bank v. Vinson*, 106 S. Ct. 2399, 2408 [1986]).[11]  In light of this holding, the Second Circuit has derived, from the applicable caselaw, certain rules to find an employer liable for permitting the existence of a hostile work environment.  *Id*.

---

[11]     *See also Murray*, 57 F.3d at 249 ("Whether the harassing conduct of a supervisor or coworker should be imputed to the employer is determined in accordance with common-law principles of agency.") (citations omitted).

Pursuant to these rules derived by Second Circuit, "if a plaintiff's supervisor is the alleged harasser, an employer will be liable if the supervisor uses his actual or apparent authority to further the harassment, or if the supervisor was otherwise aided in accomplishing the harassment by the existence of the agency relationship." *Id.* (citing *Karibian v. Columbia Univ.*, 14 F.3d 773, 780 (2d Cir.), *cert. denied*, 114 S. Ct. 2693 [1994]).[12] "By contrast, where a low-level supervisor does not rely on his supervisory authority to carry out the harassment, or a co-employee of the plaintiff is the alleged harasser, an employer will generally not be liable unless the employer either [1] provided no reasonable avenue of complaint or [2] knew of the harassment but did nothing about it." *Id.* (citing *Karibian*, 14 F.3d at 780 and *Kotcher*, 957 F.2d at 63).[13]

With regard to the requirement that the employer provide a reasonable avenue of complaint, an employer who does not have a sexual harassment policy does not provide a reasonable avenue for complaint. *Brabson v. The Friendship House of W. N.Y.*, 46 F. App'x 14,

---

[12]   *See also Murray*, 57 F.3d at 249 ("[W]hen a supervisor wields the authority delegated to him by an employer either (a) to condition 'tangible job benefits' affecting an employee on the employee's acceptance or rejection of the supervisor's sexual demands, . . . or (b) to further the creation of a discriminatorily abusive work environment, the supervisor's conduct is deemed to be that of the employer, and the employer's liability for that conduct is absolute.") (citations omitted); *Drew v. Plaza Const. Corp.*, 688 F. Supp.2d 270, 280 (S.D.N.Y. 2010) ("When a supervisor participates in the conduct creating a hostile work environment, liability may be imputed to the employer.").

[13]   *See also Rojas v. Roman Catholic Diocese of Rochester*, 557 F. Supp.2d 387, 394 (W.D.N.Y. 2008) ("[W]here the harassment is attributed . . . to a supervisor with immediate or successively higher authority over the employee. . . , a court looks first to whether the supervisor's behavior culminated in a tangible employment action against the employee. If no such tangible employment action is present, however, an employer will still be liable for a hostile work environment created by a supervisor unless the employer successfully establishes an affirmative defense. That defense requires the employer to show that [a] it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and [b] the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.").

17-18 (2d Cir. 2002).[14] "However, there is no basis for a per se rule that the absence of a *written*

. . . policy, standing alone, permits a finding that the employer has failed to provide a reasonable

avenue for complaint . . . ." *Reed v. A.W. Lawrence & Co., Inc*., 95 F.3d 1170, 1180 (2d Cir.

1996) (citation and internal quotations omitted; emphasis added).

With regard to the requirement that the employer do something about harassment of

which it has knowledge, the essence of this requirement is the *reasonableness* of the employer's

response to the plaintiff's complaints. *Snell v. Suffolk County*, 782 F.2d 1094, 1104 (2d Cir.

1986) ("[W]e hold today that once an employer has knowledge of a racially combative

atmosphere in the workplace, he has a duty to take reasonable steps to eliminate it.").[15]

Furthermore, as the Second Circuit has explained,

---

[14]    On the other hand, where there is a policy in place, "courts have held that no reasonable fact-finder could conclude that the employers failed to provide a reasonable avenue for employees to complain of sexual harassment or discrimination." *Duch v. Kohn*, 04-CV-0109, 2007 WL 2230174, at *6 (S.D.N.Y. Aug. 03, 2007) (citing *Dawson v. County of Westchester*, 351 F. Supp.2d 176, 192 [S.D.N.Y. 2004] [other citation omitted])

[15]    *See also Brabson*, 46 F. App'x at 17 ("[The defendant] failed to show that [the plaintiff's harasser] was adequately reprimanded or that any reasonable steps were taken to prevent future conduct."); *Murray v. N.Y. Univ. Coll. of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995) ("An employer who has notice of a discriminatorily abusive environment in the workplace has a duty to take reasonable steps to eliminate it."), *accord*, *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir. 1998); *Faulkner v. Niagara Mohawk Power Corp.*, 05-CV-0974, 2006 WL 3207815, at *7 (N.D.N.Y. Nov. 03, 2006) (McAvoy, J.) (stating that an employer will not be held liable for a hostile work environment when the employer takes "prompt and reasonable remedial action" in response to a complaint); *Dawson v. County of Westchester*, 351 F. Supp.2d 176, 192 (S.D.N.Y. 2004) (characterizing issue as whether the employer, once notified of the harassment, took "reasonable care to prevent the harassment or act promptly to correct it"); *Rechichi v. Eastman Kodak Co.*, 02-CV-6249, 2004 WL 1698333, at *6-7 (W.D.N.Y. Jan. 21, 2004) (stating that, "[w]here the harassment was caused by a non-supervisory co-worker, the burden falls to the plaintiff to prove that the employer did not take reasonable steps to address the situation") [internal quotation marks and citations omitted]; *cf.* 29 C.F.R. § 1604.11(d) (1997) (employer is liable for sexual harassment by co-worker if it "knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action").

> Whether the company's response was reasonable has to be assessed
> from the totality of circumstances.  Factors to be considered in this
> analysis are the gravity of the harm being inflicted upon the plaintiff,
> the nature of the employer's response in light of the employer's
> resources, and the nature of the work environment.

*Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 65 (2d Cir. 1998) (citations omitted).  Other factors

may include (1) the amount of time that elapsed between the notice and remedial action, (2)

whether the response taken comported with the employer's policies, (3) whether the co-

employees complained of were confronted and reprimanded, and (4) whether the response ended

the harassment.  *See Finnerty v. William H. Sadlier, Inc.*, 176 F. App'x 158, 162 (2d Cir. 2006);

*Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 154 (2d Cir. 1997).[16]

Here, in his proposed Amended Complaint, Plaintiff alleges the following facts in

support of his hostile work environment claim: (1) "[o]n more than one occasion, [Defendant]

Raucci would say things to ridicule and humiliate the Plaintiff in front of his co-workers and

subordinates due to his medical condition"; (2) "[f]or example, [Defendant] Raucci would ask if

Plaintiff needed to 'wear a colostomy bag'"; (3) "[Defendant] Raucci also stated that if Plaintiff

needed to 'shit' that he should 'shit in his pants'"; (4) "[o]n occasion, [Defendant] Raucci would

perform the 'man game' in Plaintiff's presence during which Raucci would sit next to a male

employee in the Facility's Office and run his hand up [the] male employee's thigh and attempt to

grab his genitals"; (5) "[m]ore than once, [Defendant] Raucci directly attempted to grab . . .

Plaintiff's genitals, forcing . . . Plaintiff to physically remove himself from Raucci's grasp or

otherwise flee to escape"; (6) "[Defendant] Raucci had previously attempted to grab the genitals

of other male subordinates"; (7) "[Defendant] Raucci would additionally use sexually charged

---

[16]      *See also Hanna v. Boys and Girls Home and Family Servs., Inc.*, 212 F. Supp.2d
1049, 1063 (N.D. Iowa 2002) (collecting cases).

language in Plaintiff's presence despite Plaintiff's objection"; (8) Plaintiff complained of "the sexual harassment"; (9) "prior to Plaintiff's complaints of harassment, another employee also filed a sexual harassment complaint alleging, *inter alia*, that his genitals had also been touched by [Defendant] Raucci and that at a staff meeting, Raucci [made an offensive remark about that employee's mother]."  (Dkt. No. 18, Attach. 5.)

Under the circumstances, the Court finds that Plaintiff has alleged multiple instances of harassing conduct (in the form of sexual touching and/or remarks).  Moreover, the Court finds that the allegations in the proposed Amended Complaint plausibly suggest that the harassment occurred because of Plaintiff's gender.  For example, Plaintiff refers to Defendant Raucci's touching a male employee's thigh as "the man game."  For these reasons, the Court concludes that Plaintiff has alleged facts plausibly suggesting an objectively hostile work environment.

Proceeding to an analysis of whether a specific basis exists for imputing the conduct in question to Plaintiff's employer, the Court finds that Plaintiff has alleged facts plausibly suggesting that Defendant Raucci was his supervisor, and that either (1) he used his actual or apparent authority to further the harassment, or (2) he was otherwise aided in accomplishing the harassment by the existence of the agency relationship.  As a result, Plaintiff has alleged facts plausibly suggesting that the hostile work environment may be imputed to Defendant SCSD.

With regard to Defendants' three remaining arguments in support of their request for the dismissal of this claim, the Court rejects Defendants' argument that the fact that Plaintiff has sought relief under the New York State Workers' Compensation Law bars him from bringing this claim of a hostile work environment under Title VII.  *See Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir. 1997) ("Of course, [workers' compensation exclusivity] shouldn't [bar Title VII harassment suits], nor could it under the Supremacy Clause.  U.S. CONST. art. VI, cl. 2.  But it

can and does bar state common law negligence claims."); *cf. Henriquez v. Times Herald Record*, 97-CV-6176, 1997 WL 732444, at *8 (S.D.N.Y. Nov. 25, 1997) (implicitly recognizing that Title VII disparate-treatment claim is not barred by exclusive remedy of Workers' Compensation Law, which is available in cases of negligence, because "to establish a Title VII violation in a disparate treatment case, plaintiff must present proof of intentional discrimination by the employer") (citations omitted).

In addition, the Court rejects Defendants' argument that Plaintiff's hostile work environment claim is barred by the statute of limitations (because Plaintiff filed a charge of discrimination with the EEOC more than 300 days after the occurrence of the alleged sexual harassment, and Plaintiff did not receive a decision from the EEOC on the merits of his complaint before filing his Complaint). "Timely filing of a charge of discrimination with the EEOC is a prerequisite to filing a Title VII complaint in federal court" *Klein v. N.Y. Univ.*, 07-CV-0160, 2008 WL 3843514, at *2 (S.D.N.Y. Aug. 14, 2008) (citing 42 U.S.C. § 2000e-5[b]). "In New York, a plaintiff must file a charge of discrimination with the EEOC within three hundred days of the alleged discriminatory or retaliatory conduct." *Klein*, 2008 WL 3843514, at *2 (citing *Quinn v. Green Tree Credit Corp*., 159 F.3d 759, 766 [2d Cir. 1998]). "The three hundred day period serves as a statute of limitations, and claims regarding acts that occurred more than three hundred days prior to the employee's initiation of administrative review are thus time-barred[,]" unless the continuing violation doctrine applies. *Id*. (citing *Fitzgerald v. Henderson*, 251 F.3d 345, 359 [2d Cir. 2001]). However, "where the plaintiff alleges that the defendant has created a hostile work environment, the continuing violation doctrine is applicable." *Id*. (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 103 [2002]). Here, because Plaintiff has alleged facts plausibly suggesting that Defendant SCSD created a hostile

work environment, the continuing violation applies so as to toll the statute of limitations until the

last discriminatory act in furtherance of the policy or practice at issue, rendering Plaintiff's claim

of hostile work environment timely in nature.  In addition, the Court notes that a plaintiff is free

to request a right-to-sue letter 180 days after his or her initial filing with the EEOC (i.e., a

plaintiff need not wait for the EEOC to decide the merits of his charge before requesting a right-

to-sue letter and filing a complaint in federal court).  29 C.F.R. § 1601.28(a) (1998).  For each of

these reasons, Plaintiff's hostile work environment claim is not barred by the statute of

limitations.

Finally, the Court rejects Defendants' argument that Defendant SCSD is protected from

liability by the *Ellerth/Faragher* affirmative defense, because Plaintiff has alleged facts plausibly

suggesting that no action was taken by Defendant SCSD to address Defendant Raucci's

harassing behavior, despite Plaintiff making the District, and specifically Defendant Stricos,

aware of this behavior.

For these reasons, Plaintiff's hostile work environment claim survives Defendants'

motion to dismiss.

## 2.      Claim of Retaliation

As stated above in Part I.C. of this Decision and Order, Defendants assert two arguments

in support of their request for the dismissal of this claim: (1) Plaintiff's decision to chose

Workers' Compensation as a remedy bars him from bringing such a claim; and (2) alternatively,

the applicable statute of limitations bars such a claim.

Under the circumstances, the Court rejects both arguments for the reasons stated above in

Part IV.A.1. of this Decision and Order.  More specifically, the Court rejects Defendants'

argument that the fact that Plaintiff has sought relief under the New York State Workers'

Compensation Law bars him from bringing this claim of a hostile work environment under Title VII. *See Torres*, 116 F.3d at 640; *cf. Henriquez*, 1997 WL 732444, at *8.  In addition, the Court rejects Defendants' argument that Plaintiff's hostile work environment claim is barred by the statute of limitations, given the applicability of the continuing violation doctrine and Plaintiff's ability to request a right-to-sue letter 180 days after his initial filing with the EEOC. *See Klein*, 2008 WL 3843514, at *2; 29 C.F.R. § 1601.28(a) (1998).

Finally, although Defendants did not expressly raise the argument that Plaintiff failed to allege facts plausibly suggesting a claim of retaliation, the Court addresses that issue for purposes of clarity.  To state a cause of action for retaliation under the ADEA or Title VII, a Plaintiff must allege facts plausibly suggesting "(1) that []he participated in a protected activity, (2) that []he suffered an adverse employment action, and (3) that there was a causal connection between h[is] engaging in the protected activity and the adverse employment action." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010).

Here, Plaintiff has alleged that, on July 6, 2005, he filed a complaint with the Director of Personnel for the District, Defendant Stricos, about Defendant Raucci's behavior.  Plaintiff has also alleged that, after a meeting with certain individuals about Defendant Raucci's behavior on October 6, 2005, he was "assured that some remedial action would be taken."  However, to his knowledge, no action was ever taken.  Plaintiff further alleges that he did not return to work after May 29, 2005, but was instead terminated on or about October 20, 2006.

Based on these allegations, Plaintiff has alleged facts plausibly suggesting a claim for retaliation.  As a result, Plaintiff's claim for retaliation under Title VII survives Defendants' motion to dismiss.

The Court notes that, moving forward, it has some doubt as to Plaintiff's ability to demonstrate a casual connection between his filing of a complaint on July 6, 2005, and his termination more than one year later.  However, the Court recognizes that "the element of causal connection need 'not [be] based only-or even primarily-on temporal proximity' but may also rely on non-circumstantial evidence, such as written or verbal statements of retaliatory intent." *Pakter v. New York City Dept. of Educ.*, 08-CV-7673, 2010 WL 1141128, at *8 (S.D.N.Y. Mar. 22, 2010) (citing *Patane v. Clark*, 508 F.3d 106, 116-17 [2d. Cir. 2007]).

**B.**     **Plaintiff's Claims Under the ADA Against Defendant SCSD**

**1.**     **Claim of Disability Discrimination**

As stated above in Part I.C. of this Decision and Order, Defendants assert two arguments in support of their request for the dismissal of this claim: (1) Plaintiff failed to notify his employer of any disabilities from which he suffered; and (2) this claim is barred by the statute of limitations.

Based on a liberal construction of Plaintiff's proposed Amended Complaint, the Court rejects Defendants' second argument for the reasons stated above in Part IV.A.1. of this Decision and Order.  However, the Court liberally construes Defendants' first argument as an attack on the pleadings of Plaintiff's ADA claim.  Furthermore, the Court accepts this argument with regard to each of Plaintiff's alleged disabilities.

More specifically, with regard to Plaintiff's claim that his anxiety is disabling within the meaning of the ADA, the Court finds that, based on his own factual allegations, he is not disabled within the meaning of the ADA.  "Titles I and II of the ADA collectively prohibit employers and public entities from discriminating against and excluding from benefits 'qualified individual[s]' with disabilities." *Emmons v. City Univ. of N.Y.*, 09-CV-0537, 2010 WL 2246413,

at *7 (E.D.N.Y. June 2, 2010) (citing 42 U.S.C. §§ 12112[a], 12132). "Under either title, [a] plaintiff must assert that (1) defendants are subject to the ADA[,] (2) that []he is 'disabled' within the meaning of the statute[,] and (3) [that ]he was subject to some adverse employment action or denied benefits by reason of having such disability." *Emmons*, 2010 WL 2246413, at *7 (citing, *inter alia*, *Bolmer v. Oliveira*, 594 F.3d 134, 148 [2d Cir. 2010]).

Under the ADA, "a disabled individual [i]s one who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." *Id*. at *8 (internal quotation marks and citations omitted). "Major life activities include functions such as caring for oneself, performing manual tasks, walking, seeing, hearing . . . and working, . . . and must be of central importance to daily life." *Id*. (internal quotation marks and citations omitted). However, "the inability to perform a single particular job does not constitute a substantial limitation in the major life activity of working." *Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 05-CV-5106, 2009 U.S. Dist. LEXIS 40616, at *25 (E.D.N.Y. May 24, 2009) (internal quotation marks and citations omitted).

Here, Plaintiff does not allege facts plausibly suggesting that he has a record of disability or that he was regarded as disabled by Defendants. As a result, Plaintiff must allege facts plausibly suggesting that he has "a physical or mental impairment that substantially limits one or more major life activities" as required by 42 U.S.C. § 12102(2)(A).

In his proposed Amended Complaint, Plaintiff alleges that he did not begin suffering from anxiety until sometime after May of 2003. Plaintiff further alleges that his "diagnosed anxiety disorder . . . is casually connected to [Defendant] Raucci's behavior." (Dkt. No. 18, Attach. 5, at ¶ 11.) In addition, Plaintiff alleges that he "would have been fully capable of

26

performing the functions of his job absent the conduct of [Defendant] Raucci." (Dkt. No. 18,

Attach. 5, at ¶ 65.)  However, Plaintiff's lengthy proposed Amended Complaint is conspicuously

absent of any allegation that his anxiety limited his ability to perform a broad range of jobs.

Under these circumstances, the Court finds Plaintiff has failed to allege facts plausibly

suggesting that his anxiety disorder constitutes an impairment that substantially limits a major

life activity.  *Cf. Santos v. City of N.Y.*, 01-CV-0120, 2001 WL 1568813, at *5 (S.D.N.Y. Dec. 7,

2001) (holding that, because "Santos does not . . . allege that her interactions with [her

supervisor] created her condition[, but instead] . . . maintains that her impairment existed before

working with Rosa and that her 'medical situation was aggravated by the actions of Ms. Rosa[,]'

. . . the impairment arguably restricts her 'ability to perform . . . a broad range of jobs'").

        In addition, with regard to Plaintiff's argument that his irritable bowel syndrome is

disabling within the meaning of the ADA, the Court rejects this argument for two reasons.  First,

Plaintiff fails to allege facts plausibly suggesting that his irritable bowel syndrome substantially

limits a major life activity.  Instead, in his proposed Amended Complaint, Plaintiff alleges that

he "suffers from irritable bowel syndrome, which was exacerbated by [Defendant] Raucci's

behavior." (Dkt. No. 18, Attach. 5, at ¶ 12.)  In other words, Plaintiff alleges that he suffered

from irritable bowel syndrome at some point prior to working with Defendant Raucci, yet was

able to work in his capacity as a custodial supervisor, without accommodation, prior to being

assigned to work with Defendant Raucci.

        Second, Plaintiff has failed to allege facts plausibly suggesting that he provided

Defendant SCSD with fair notice that his irritable bowel syndrome in any way rendered him

disabled within the meaning of the ADA.  For example, the proposed Amended Complaint is

devoid of any factual allegation regarding what impact, if any, Plaintiff's irritable bowel

syndrome had on his ability to work. *See Doverspike v. Intern. Ordinance Tech.*, 09-CV-00473, 2010 WL 986513, at *7 (W.D.N.Y. Mar. 17, 2010) ("[T]he Complaint is devoid of any allegation that Defendant was ever aware of any of Plaintiff's physical issues prior to Plaintiff's discharge, much less any negative impact such physical concerns could have on Plaintiff's ability to work, or that Plaintiff ever requested, and was denied, a reasonable accommodation of such disabilities. As such, the Complaint is devoid of sufficient facts to give Defendant fair notice of the grounds on which Plaintiff's ADA claim rests.").

For these reasons, Plaintiff's ADA disability discrimination claim is dismissed.

### 2.     Claim of Retaliation

As stated above in Part I.C. of this Decision and Order, Defendants assert two arguments in support of their request for the dismissal of this claim: (1) Plaintiff failed to notify his employer of any disabilities from which he suffered; and (2) this claim is barred by the statute of limitations.

A plaintiff need not allege a disability to state a claim for retaliation under the ADA. *Emmons*, 2010 WL 2246413, at *9 (citation omitted). Instead, "to sustain a retaliation claim [under the ADA], . . . [a plaintiff] must allege that (1) []he engaged in an activity 'protected by the ADA'[,] (2) defendants were aware of this activity[,] (3) defendants took adverse employment action against h[im,] and (4) a causal connection existed between the alleged adverse action and the protected activity." *Emmons*, 2010 WL 2246413, at *9 (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 719 [2d Cir. 2002]).

Here, in his proposed Amended Complaint, Plaintiff alleges that, during his medical leave, he filed a sexual harassment complaint with Defendant Stricos regarding Defendant Raucci's conduct. Although the proposed Amended Complaint "does not specifically allege that

[P]laintiff complained about being discriminated against on the basis of having a disability–the sort of activity that ADA Title V seeks to protect . . .–such complaints can be reasonably inferred from the pleading." *Emmons*, 2010 WL 2246413, at *9 (noting that "plaintiff will have to prove at a later stage of the litigation that she was actually engaged in such protected activity").

As a result, Plaintiff's retaliation claim arising under the ADA survives Defendants' motion to dismiss. The Court would only add that it rejects Defendants statute of limitations argument for the reasons stated in Part IV.A.1. of this Decision and Order.

**C.    Plaintiff's Claim of Discrimination Under NYSHRL § 296 Against Defendant SCSD**

Defendants have failed to address this claim in their motion to dismiss. This is unfortunate because, "although the definition of disability under § 296 is less restrictive than under the ADA, . . . the requirements of a prima facie claim pursuant to the New York Human Rights Law is identical to one pursuant to the ADA." *Ehrlich v. Gatta*, 07-CV-11597, 2009 WL 3213715, at *5 (S.D.N.Y. Oct. 5, 2009) (citing, *inter alia*, *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 n.3 [2d Cir. 2001]).

However, because the Court is without authority to *sua sponte* dismiss this claim under the circumstances, Plaintiff's NYSHRL claim survives Defendants' motion to dismiss.

**D.    Plaintiff's Claims Under 42 U.S.C. § 1983**

**1.    Claim of Retaliation Under the First Amendment Against Defendant SCSD**

As stated above in Part I.C. of this Decision and Order, Defendants argue that all of Plaintiff's claims under 42 U.S.C. § 1983 must be dismissed because he has failed to "establish a prima facie case of discrimination."

As an initial matter, as noted in Part II.C. of this Decision and Order, the *McDonnell Douglass* burden-shifting framework does not apply on a motion to dismiss.  Accordingly, the Court rejects Defendants' broad-sweeping argument that Plaintiff's claims under 42 U.S.C. § 1983 must be dismissed because he has failed to "establish a prima facie case of discrimination."

In any event, the Court notes that, for purposes of Defendants' motion, the elements of a claim of retaliation under the First Amendment are substantively the same as the elements of a claim of retaliation under Title VII.  *See Pakter*, 2010 WL 1141128, at *7 ("To state a cause of action for retaliation under the ADEA or Title VII, a Plaintiff must allege [1] that she participated in a protected activity, [2] that she suffered an adverse employment action, and [3] that there was a causal connection between her engaging in the protected activity and the adverse employment action. To state a claim for First Amendment Retaliation, a plaintiff must show [1] that the speech or conduct at issue protected, [2] that the defendant took adverse action against the plaintiff, and [3] that there was a causal connection between the protected speech and the adverse action.") (internal quotation marks and citations omitted).  As a result, for the same reasons as stated above in Part IV.A.2. of this Decision and Order, Plaintiff's claim of retaliation under the First Amendment survives Defendants' motion to dismiss.

### 2.    Claim of Denial of Procedural Due Process Under the Fourteenth Amendment Against Defendants SCSD, the Board, and Ely

As stated above in Part I.C. of this Decision and Order, Defendants assert two arguments in support of their request for the dismissal of this claim: (1) Plaintiff has failed to "establish a prima facie case of discrimination"; and (2) Plaintiff received all the process he was due under New York Civil Service Law.

"Due process has both a procedural and substantive component."  *Berrios v. State Univ. of N.Y. at Stony Brook*, 518 F. Supp.2d 409, 418 (E.D.N.Y. 2007).  "Procedural due process requirements are generally satisfied by appropriate notice and an opportunity to be heard."  *Berrios*, 518 F. Supp.2d at 418 (citation omitted).  "Substantive due process, on the other hand, refers not to particular hearing procedures, but circumscribes an 'outer limit' on permissible governmental action.  *Id*. (citation omitted).

"To state a due process violation–procedural or substantive–Plaintiff must first show a deprivation of a constitutionally protected property or liberty interest."  *Id*. (citing, *inter alia*, *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1061-62 [2d Cir.], *cert. denied*, 510 U.S. 865 [1993]).  "It is only when such a right is established that the court may turn to a discussion of whether there has been a deprivation of that right without due process."  *Id*.  "While state law may define the interest sought to be protected, federal law determines whether an interest rises to the level of an 'entitlement' implicating the protections of the Due Process Clause."  *Id*. at 418-19 (citations omitted).

"The recognition of a property right to the continuation of one's public employment, or to particular working conditions, must be based upon more than an 'abstract need or desire,' instead, there must be a 'legitimate claim of entitlement. . . .'"  *Id*. (quoting *Morris v. Lindau*, 196 F.3d 102, 115 [2d Cir. 1999]).  "Thus, a plaintiff must establish that the continuation of employment or a desired benefit was 'virtually a matter of right.'"  *Id*. (quoting *Kane v. Krebser*, 44 F. Supp.2d 542, 550 [S.D.N.Y. 1999]).

Based on a liberal construction of Plaintiff's proposed Amended Complaint, the Court finds that Plaintiff fails to allege facts plausibly suggesting that he was employed in such a

manner that guaranteed him either continued employment or tenure.[17]  Instead, Plaintiff alleges

that he was an individual separated from service by reason of disability resulting from an assault

sustained in the course of his employment, and that, pursuant to New York Civil Service Law §

71, he was therefore entitled to (1) leave of absence for two years, (2) notice that he would be

terminated, prior to his termination, and (3) a post-termination hearing.

"It is well settled that a civil service employee is not deprived of [procedural] due process

if the employee is terminated without a pre-termination hearing pursuant to Section 71 of the

Civil Service Law."  *Santiago v. Newburgh Enlarged City Sch. Dist.*, 434 F. Supp.2d 193, 198

(S.D.N.Y. 2006) (collecting cases).  "Because the Civil Service Law gave [P]laintiff

post-termination due process (i.e., the right to demand to return to work, and to contest any

determination that []he was not fit to return to work), the Fourteenth Amendment requirement is

fully satisfied."  *Santiago*, 434 F. Supp.2d at 198 (citing, *inter alia*, *Vargas v. City of N.Y.*, 377

F.3d 200, 208 [2d Cir. 2004]).[18]

―――――――――――――

[17]     The Court notes that, in his memorandum of law in support of his motion to amend his Complaint, Plaintiff argues that he was entitled to a pre-termination hearing pursuant to NY CIV. SERV. LAW § 75.  However, in his proposed Amended Complaint, Plaintiff fails to allege facts plausibly suggesting that he is a person described in any paragraph of that statute.

[18]     *See also Gudema v. Nassau County*, 163 F.3d 717, 724 (2d Cir. 1998) (holding that "[a] deprivation of liberty or property through the conduct of a state employee whose acts are random and unauthorized . . . does not constitute a procedural due process violation so long as the state provides a meaningful remedy thereafter[,]" and noting that an Article 78 proceeding provides a meaningful remedy where violations of due process by a local governmental entity are alleged); *Longo v. Suffolk County Police Dept. County of Suffolk*, 429 F. Supp.2d 553, 559 (E.D.N.Y. 2006) ("Courts in this circuit as well as the Second Circuit Court of Appeals have held, clearly and repeatedly, that the combination of Section 75 and 78 provide a terminated public employee with remedies that are consistent with the requirements of the due process clause of the Constitution . . . . Moreover, it matters not whether a plaintiff actually avails himself of the state court post-deprivation process.  So long as that process is available, a due process claim must be dismissed.").

Therefore, even assuming that Plaintiff had alleged facts plausibly suggesting that he was employed in such a manner that guaranteed him either continued employment or tenure, Plaintiff's procedural due process claim could not survive Defendant's motion to dismiss.  As a result, Plaintiff's procedural due process claim is dismissed.

> **3.     Claim of Denial of Substantive Due Process Under the Fourteenth Amendment Against Defendants SCSD, Raucci, and Stricos**

Other than making their broad-sweeping argument that all of Plaintiff's claims under 42 U.S.C. § 1983 must be dismissed because he has failed to "establish a prima facie case of discrimination," Defendants have failed to move to dismiss this claim.  This is unfortunate because, as stated above in Part IV.D.2. of this Decision and Order, Plaintiff has failed to allege facts plausibly suggesting that he was employed in such a manner that guaranteed him either continued employment or tenure.  *See Berrios*, 518 F. Supp.2d at 421 ("[A] plaintiff claiming Constitutional rights to continued employment or benefits must show that these rights were virtually a matter of right. . . . No Plaintiff here can satisfy this standard.  Instead, even construing the complaint in the light most favorable to all Plaintiffs, it is clear that these individuals were employed pursuant to specific contracts that guaranteed neither continuing employment nor tenure.  Under these circumstances, the court dismisses the Due Process claims of all Plaintiffs.").

However, because the Court is without authority to *sua sponte* dismiss this claim under the circumstances, Plaintiff's substantive due process claim survives Defendants' motion to dismiss.

> **4.     Claim of Denial of Equal Protection Against Defendants SCSD, Raucci, and Stricos**

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of this claim because (1) Plaintiff has failed to allege facts plausibly suggesting that his equal

protection rights were violated, and (2) Plaintiff has failed to "establish a prima facie case of discrimination." Based on the current record, the Court accepts Defendants' first argument. Furthermore, because it has accepted Defendants' first argument, the Court need not, and does not, address the merits of Defendants' second argument.

The Equal Protection Clause of the Fourteenth Amendment, which provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws" (*see* U.S. Const. amend. XIV, § 1), "requires the government to treat all similarly situated individuals alike." *Young v. Suffolk County*, 09-CV-3325, 2010 WL 1424008, at *16 (E.D.N.Y. Apr. 9, 2010) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 [1985]).

Ordinarily, "[t]o state a claim for an equal protection violation, [plaintiffs] must allege that a government actor intentionally discriminated against them on the basis of race, national origin or gender." *Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999), *overruled in part on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002). However, "an individual not alleging invidious discrimination on the basis of membership in some group may nevertheless prevail on an equal protection claim under the 'class of one' theory recognized by the Supreme Court in *Willowbrook v. Olech*, 528 U.S. 562 (2000)." *Young*, 2010 WL 1424008, at *16.

"Under a 'class of one' equal protection claim, a plaintiff must allege that (1) '[he] has been intentionally treated differently from others similarly situated' and (2) 'there is no rational basis for the difference in treatment.'" *Id*. (quoting *Willowbrook*, 528 U.S. at 564). "In order to state an equal protection violation under § 1983, 'it is axiomatic that plaintiff must allege that similarly situated persons were treated differently.'" *Id*. (quoting *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 [2d Cir. 1994]).

Here, in his proposed Amended Complaint, Plaintiff alleges as follows with regard to his equal protection claim: (1) he "filed a written complaint concerning [Defendant Raucci's] continuing pattern of sexual harassment with [Defendant] Stricos"; (2) "no corrective or remedial action was ever taken by the District, and [Defendant] Stricos deliberately ignored [his] complaint"; (3) "[u]pon information and belief, other similarly situated employees' complaints have been afforded the protections of the Schenectady School District's Non-Discrimination/Anti-Sexual Harassment Policy"; (4) "[t]hose complaints have been handled differently then the complaint filed by the Plaintiff"; and (5) "Plaintiff's complaints of sexual harassment and disability discrimination were treated differently because he was a male."  (Dkt. No. 18, Attach. 5, at ¶¶ 106-110.)

As an initial matter, to the extent that Plaintiff seeks to base his equal protection claim on a class-of-one theory, the claim must fail because the Supreme Court has rejected the class-of-one theory of equal protection in the public employment context.  *See Engquist v. Oregon Dep't of Agric.*, 128 S. Ct. 2146, 2151 (2008) ("Our traditional view of the core concern of the Equal Protection Clause as a shield against arbitrary classifications, combined with unique considerations applicable when the government acts as employer as opposed to sovereign, lead us to conclude that the class-of-one theory of equal protection does not apply in the public employment context.").

Moreover, to the extent that Plaintiff alleges that he was intentionally discriminated against on the basis of his gender, this claim must fail for two reasons.  First, the proposed Amended Complaint fails to allege facts plausibly suggesting that there was no rational or legitimate basis for the District to decline to take remedial action with regard to Plaintiff's complaints.  In other words, the proposed Amended Complaint fails to allege facts plausibly

suggesting that Defendant SCSD's inaction was motivated by intentional discrimination. Instead, the proposed Amended Complaint simply alleges that, "[d]espite due demand, the District took no steps to remediate [Defendant] Raucci's conduct." Second, the proposed Amended Complaint fails to allege facts plausibly suggesting that Defendants SCSD, Raucci, and Stricos intentionally discriminated against male employees. Instead, Plaintiff alleges, in conclusory fashion, that, "[u]pon information and belief, other similarly situated employees' complaints have been afforded the protections of the Schenectady School District's Non-Discrimination/Anti-Sexual Harassment Policy."[19]

For these reasons, Plaintiff's equal protection claim is dismissed.

**E.      Plaintiff's Claim of Improper Notice Under 29 U.S.C. § 1166 Against Defendant SCSD**

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of this claim because, at the time Plaintiff was terminated, he was not receiving health care benefits from SCSD, and therefore no notice was required.

Based on a liberal construction of Plaintiff's proposed Amended Complaint, the Court rejects Defendants' argument. "Under COBRA, after a qualifying event[,] an employer must notify an employee of his or her right to elect to continue health insurance coverage for eighteen months." *O'Shea v. Childtime Childtime, Inc.*, 01-CV-1264, 2002 WL 31738936, at *6 (N.D.N.Y. Dec. 2, 2002) (Homer, M.J.) (citing, *inter alia*, 29 U.S.C. §§ 1161, 1162[2][A][i] [1999]). "Termination of employment is a qualifying event if the termination was not for gross misconduct." *O'Shea*, 2002 WL 31738936, at *6 (citing 29 U.S.C. § 1163[2]). "The employer must provide notice of the right to elect within fourteen days after termination." *Id.* (citing 29

_____

[19]      The Court notes that the proposed Amended Complaint leaves open the possibility that the "other similarly situated employees" includes male employees.

U.S.C. §§ 1166[a][4][A], [c]).  "The employee then has sixty days to elect to continue participating in the health care plan."  *Id*. (citing 29 U.S.C. § 1165[1]).

Here, in his proposed Amended Complaint, with regard to this claim, Plaintiff alleges as follows: (1) he was terminated on or about October 20, 2006;[20] (2) he was never provided any notice pursuant to 29 U.S.C. § 1166 (COBRA) of "his right to receive continued coverage under his health maintenance plan following his termination"; and (3) "[u]pon information and belief, [his] health maintenance plan was immediately terminated on or about October 20, 2006."

Based on these allegations, Plaintiff has alleged facts plausibly suggesting both that (1) a qualifying event occurred, which required Defendant SCSD to provide him with notice of his right to elect to continue health insurance coverage, and (2) Defendant SCSD failed to provide this notice.  As a result, Plaintiff's improper notice claim under COBRA survives Defendants' motion to dismiss.[21]

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to amend his Complaint (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 25) is **GRANTED in part** and **DENIED in part** in the following respects:

---

[20]      Plaintiff notes elsewhere in his proposed Amended Complaint that he was provided notice of termination on or about November 1, 2006.  (Dkt. No. 18, Attach. 5, at ¶ 40.)

[21]      The Court notes that, at this stage of the proceedings, it is inappropriate for the Court to consider the record evidence adduced by Defendants in support of their argument that Plaintiff was not entitled to notice, and/or the affidavit adduced by Plaintiff in response to Defendants' argument.

(1) Plaintiff's following claims are **<u>DISMISSED</u>**:

      (i) the disability discrimination claim pursuant to the ADA;

      (ii) the procedural due process claim pursuant to the Fourteenth Amendment; and

      (iii) the equal protection claim pursuant to the Fourteenth Amendment; and

(2) Plaintiff's following claims survive Defendants' motion to dismiss:

      (i) the hostile work environment claim pursuant to Title VII;

      (ii) the retaliation claim pursuant to Title VII;

      (iii) the retaliation claim pursuant to the ADA;

      (iv) the disability discrimination claim pursuant to the NYSHRL;

      (v) the retaliation claim pursuant to the First Amendment;

      (vi) the substantive due process claim pursuant to the Fourteenth Amendment; and

      (vii) the improper notice claim pursuant to 29 U.S.C. § 1166; and it is further

**ORDERED** that counsel are directed to appear on **OCTOBER 5, 2010 at 3:00 p.m.** in chambers for a pretrial conference, at which counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time. If plaintiff's counsel would like to participate via telephone conference, counsel should make that request in writing. Plaintiff is further directed to forward a written settlement demand to defendants no later than **SEPTEMBER 10, 2010**, and the parties are directed to engage in meaningful settlement negotiations prior to the 10/5/10 conference.

Dated: August 24, 2010
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

38